ATTACHMENT

U.S. BANKRUPTCY CLERK
EASTERN DISTRICT OF NEW YORK
2015 MAY 18 P 4: 18
RECEIVED

327 B.R. 104
**(Cite as: 327 B.R. 104)**

**C**

United States Bankruptcy Court,
E.D. New York.
In re: Michele BRUNO, Debtor.

No. 03–26651–608.
July 11, 2005.

**Background:** Chapter 7 trustee moved to pay replacement firm that he retained, after firm originally hired to represent debtor withdrew based on disqualifying **conflict** of interest, the full contingency **fee** owing in connection with representation, and original law firm objected.

**Holdings:** The Bankruptcy Court, Carla E. Craig, J., held that:
(1) law firm, by simultaneously representing both Chapter 7 debtor-passenger and driver of vehicle in which she was riding at time of accident, and by continuing to represent debtor-passenger when, after recognizing its **conflict** of interest, it obtained substitute counsel for driver, thereby violated its obligations under New York disciplinary rule and could, based upon such misconduct alone, be denied **fee** for services rendered;
(2) attorney's failure to properly review his firm's files to discern that firm was suffering from **conflict** of interest that disqualified it from representing Chapter 7 debtor, and his unfamiliarity with "disinterestedness" requirement of the Bankruptcy Code, did not excuse firm from disclosure requirements of Bankruptcy Rule 2014; and
(3) original firm was not entitled to charging lien under New York law.

Objection overruled.

West Headnotes

**[1] Attorney and Client 45 ⚷32(2)**

45 Attorney and Client
 45I The Office of Attorney
  45I(B) Privileges, Disabilities, and Liabilities
   45k32 Regulation of Professional Conduct, in General
    45k32(2) k. Standards, Canons, or Codes of Conduct. Most Cited Cases

Bankruptcy courts in New York apply New York's Code of Professional Responsibility to ethical disputes involving bankruptcy counsel. Code of Prof.Resp., Canon 1 et seq.; EC 1–1 et seq.; DR 1–101 et seq., N.Y.McKinney's Judiciary Law App.

**[2] Attorney and Client 45 ⚷21.5(6)**

45 Attorney and Client
 45I The Office of Attorney
  45I(B) Privileges, Disabilities, and Liabilities
   45k20 Representing Adverse Interests
    45k21.5 Particular Cases and Problems
     45k21.5(6) k. Bankruptcy. Most Cited Cases

**Attorney and Client 45 ⚷153**

45 Attorney and Client
 45IV Compensation
  45k153 k. Deductions and Forfeitures. Most Cited Cases

Law firm, by simultaneously representing both Chapter 7 debtor-passenger and driver of vehicle in which she was riding at time of accident, and by continuing to represent debtor-passenger when, after

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

recognizing its **conflict** of interest, it obtained substitute counsel for driver, thereby violated its obligations under New York disciplinary rule and could, based upon such misconduct alone, be denied **fee** for services rendered; it mattered not whether firm obtained information during its representation of driver that could have been used during its representation of debtor. Code of Prof.Resp., DR 5–105, N.Y.McKinney's Judiciary Law App.

**[3] Attorney and Client 45 ⚿20.1**

45 Attorney and Client
45I The Office of Attorney
45I(B) Privileges, Disabilities, and Liabilities
45k20 Representing Adverse Interests
45k20.1 k. In General. Most Cited Cases

Under the New York rules of professional conduct, lawyer generally cannot simultaneously serve clients with conflicting interests. Code of Prof.Resp., DR 5–105, N.Y.McKinney's Judiciary Law App.

**[4] Attorney and Client 45 ⚿21.10**

45 Attorney and Client
45I The Office of Attorney
45I(B) Privileges, Disabilities, and Liabilities
45k20 Representing Adverse Interests
45k21.10 k. Disclosure, Waiver, or Consent. Most Cited Cases

Under New York law, in order for attorney to simultaneously serve clients with conflicting interests, clients must give informed consent to the multiple representation. Code of Prof.Resp., DR 5–105(c), N.Y.McKinney's Judiciary Law App.

**[5] Attorney and Client 45 ⚿20.1**

45 Attorney and Client
45I The Office of Attorney
45I(B) Privileges, Disabilities, and Liabilities
45k20 Representing Adverse Interests
45k20.1 k. In General. Most Cited Cases

Under New York law, rules of professional conduct exist for protection and assurance of clients and are demanding; attorney must avoid not only fact, but even appearance, of representing conflicting interests.

**[6] Attorney and Client 45 ⚿20.1**

45 Attorney and Client
45I The Office of Attorney
45I(B) Privileges, Disabilities, and Liabilities
45k20 Representing Adverse Interests
45k20.1 k. In General. Most Cited Cases

Under New York law, attorney who undertakes joint representation of two parties in lawsuit should not continue as counsel for either one once actual conflict of interest has arisen; continued representation of either would necessarily result in violation of attorney's fiduciary obligations of preserving his or her client's confidentiality, as well as of duty to pursue client's interests vigorously. Code of Prof.Resp., DR 5–105, N.Y.McKinney's Judiciary Law App.

**[7] Bankruptcy 51 ⚿3179**

51 Bankruptcy
51IX Administration
51IX(E) Compensation of Officers and Others
51IX(E)3 Attorneys
51k3179 k. Disclosure Requirements. Most Cited Cases

Bankruptcy Rule 2014 disclosure requirements for attorneys seeking employment by trustee are strictly construed. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**[8] Bankruptcy 51 3155**

51 Bankruptcy
51IX Administration
51IX(E) Compensation of Officers and Others
51IX(E)2 Professional Persons in General
51k3155 k. In General. Most Cited Cases

All facts that may have any bearing on disinterestedness of bankruptcy professional must be disclosed. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A.

**[9] Bankruptcy 51 3155**

51 Bankruptcy
51IX Administration
51IX(E) Compensation of Officers and Others
51IX(E)2 Professional Persons in General
51k3155 k. In General. Most Cited Cases

It is responsibility of bankruptcy professional, not of court, to make sure that all relevant connections have been brought to light. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A.

**[10] Bankruptcy 51 3179**

51 Bankruptcy
51IX Administration
51IX(E) Compensation of Officers and Others
51IX(E)3 Attorneys
51k3179 k. Disclosure Requirements. Most Cited Cases

Failure of bankruptcy counsel to disclose all of his or her relevant connections, as required by Bankruptcy Rule, is independent basis for disallowance of fees. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A.

**[11] Bankruptcy 51 3179**

51 Bankruptcy
51IX Administration
51IX(E) Compensation of Officers and Others
51IX(E)3 Attorneys
51k3179 k. Disclosure Requirements. Most Cited Cases

Attorney's failure to properly review his firm's files to discern that firm was suffering from conflict of interest that disqualified it from representing Chapter 7 debtor, and his unfamiliarity with "disinterestedness" requirement of the Bankruptcy Code, did not excuse firm from disclosure requirements of Bankruptcy Rule 2014. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A.

**[12] Attorney and Client 45 183**

45 Attorney and Client
45V Lien
45k183 k. Time When Lien Attaches. Most Cited Cases

Under New York law, attorney's charging lien comes into being at commencement of action or proceeding. N.Y.McKinney's Judiciary Law § 475.

**[13] Attorney and Client 45 182(2)**

45 Attorney and Client
45V Lien
45k182 Subject-Matter to Which Lien Attaches
45k182(2) k. Judgment or Proceeds Thereof. Most Cited Cases

Under New York law, charging lien is based on equitable doctrine that attorney should be paid out of proceeds of judgment procured by him.

N.Y.McKinney's Judiciary Law § 475.

**[14] Attorney and Client 45 ⚷192(2)**

45 Attorney and Client
45V Lien
45k192 Enforcement
45k192(2) k. Proceedings. Most Cited Cases

Charging lien that attorney enjoys under New York law is enforceable by federal courts. N.Y.McKinney's Judiciary Law § 475.

**[15] Attorney and Client 45 ⚷177**

45 Attorney and Client
45V Lien
45k173 Right to Lien
45k177 k. Persons Entitled. Most Cited Cases

Under New York law, attorney is not entitled to charging lien in cases in which he or she is discharged with cause. McKinney's Judiciary Law § 475.

**[16] Attorney and Client 45 ⚷177**

45 Attorney and Client
45V Lien
45k173 Right to Lien
45k177 k. Persons Entitled. Most Cited Cases

Law firm that belatedly withdrew from its representation of Chapter 7 trustee on the eve of trial of debtor's prepetition personal injury action, because it belatedly realized that it was suffering from disqualifying conflict of interest that otherwise would have enabled trustee to discharge it for "cause," was not entitled to charging lien under New York law. N.Y.McKinney's Judiciary Law § 475.

**[17] Attorney and Client 45 ⚷153**

45 Attorney and Client
45IV Compensation
45k153 k. Deductions and Forfeitures. Most Cited Cases

Under New York law, attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal fees for any services rendered. Code of Prof.Resp., DR 1–101 et seq., N.Y.McKinney's Judiciary Law App.

**[18] Bankruptcy 51 ⚷2187**

51 Bankruptcy
51II Courts; Proceedings in General
51II(C) Costs and Fees
51k2182 Grounds and Circumstances
51k2187 k. Frivolity or Bad Faith; Sanctions. Most Cited Cases

Bankruptcy court has broad latitude to sanction attorney who violates Bankruptcy Rule 2014's disclosure rules. Fed.Rules Bankr.Proc.Rule 2014, 11 U.S.C.A.

***106** Richard J. McCord, Esq., Certilman Balin Adler & Hyman, East Meadow, NY, Breadbar Garfield & Schmelkin, New York, NY, John H. Shields, Esq., Rego Park, NY, for Debtor.

*DECISION*

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before this Court on the motion of Richard J. McCord, the chapter 7 trustee (the "Trustee"), to pay the law offices of Jeffery S. Lisabeth (the "Lisabeth Firm") the full contingency fee earned in connection with the settlement of a personal injury action on behalf of the Debtor's estate. Breadbar, Garfield and Schmelkin ("BG & S") has objected

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

to the payment of the full contingency fee to the Lisabeth Firm, asserting that it performed a substantial amount of the work required in preparing the personal injury action for trial, and that it therefore has a charging lien pursuant to § 475 of the New York Judiciary Law. BG & S is requesting 75% of the contingency fee earned by the settlement.

***107** The Trustee asserts that BG & S is not entitled to any award of fees for services rendered on behalf of the estate or rendered to the Debtor prior to the bankruptcy filing because BG & S (a) was not in the employ of the Trustee when the case was settled, (b) failed to disclose a material conflict of interest as required by Federal Rules of Bankruptcy Procedure 2014, and (c) violated the New York Code of Professional Responsibility in connection with its pre and post-representation of the Debtor by undertaking to represent two clients with differing interests in the same matter. An evidentiary hearing was held January 31, 2005.

For the reasons set forth below, BG & S's objection is overruled and the Trustee's motion to pay the full contingency fee to the Lisabeth Firm is granted.

*Jurisdiction*

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2) and the Eastern District of New York standing order of reference dated August 28, 1986. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr.P. 7052.

*Facts*

On December 15, 2003, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Code"). At the initial § 341 meeting of creditors, the Debtor advised the Trustee that she had a pending personal injury action. The Debtor and her son were passengers in a car driven by Robert Sabatino that was involved in an automobile accident on March 29, 2000. At the time of the Debtor's bankruptcy filing she was represented by BG & S.

After consulting with BG & S, the Trustee made a motion to retain the firm as the estate's personal injury counsel. John Shields of BG & S submitted an affidavit in support of the Trustee's retention application in which he affirmed that BG & S's representation of the Debtor's estate did not create a conflict of interest and that the firm held no interest adverse to the estate. This Court approved BG & S's retention pursuant to an Order dated February 4, 2004.

On August 12, 2004, over 6 months after BG & S submitted their affidavit in support of the Trustee's retention application, Martin Garfield, Esq., a partner at BG & S, sent a letter to the Trustee advising him that BG & S had represented Mr. Sabatino, the driver of the car, in the same personal injury action and therefore did have a conflict of interest with the Debtor's estate. As a result of this conflict of interest, BG & S withdrew as the Trustee's counsel.

After reviewing Mr. Garfield's letter, the Trustee immediately retained the Lisabeth Firm to represent the estate in the Debtor's personal injury action. On October 21, 2004, this Court issued an Order approving the substitution of the Lisabeth Firm for BG & S, without objection. The Lisabeth Firm conducted the trial of the Debtor's personal injury action and, prior to the jury returning a verdict, accepted an offer on behalf of the Debtor's estate to settle the case for $300,000.

On November 9, 2004, the Trustee made a motion to pay the Lisabeth Firm fees and expenses in connection with its representation of the estate in the Debtor's personal injury action. BG & S objected to the Trustee's motion, asserting that it had a charging lien for services rendered on behalf of the Debtor pre-petition and that its failure to disclose its prior

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

representation of Mr. Sabatino was a harmless error that should not disqualify it from ***108** participating in a portion of the contingency fee earned by the settlement of the Debtor's personal injury action.

*Discussion*

[1][2] Bankruptcy courts in New York apply New York's Code of Professional Responsibility to ethical disputes. *Kittay v. Kornstein,* 230 F.3d 531, 538 (2d Cir.2000), *citing In re Allboro Waterproofing Corp.,* 224 B.R. 286, 291 n. 3 (Bankr.E.D.N.Y.1998); *In re Caldor, Inc.,* 193 B.R. 165, 178 (Bankr.S.D.N.Y.1996). Pursuant to local rules, attorneys must read and become familiar with the Code of Professional Responsibility before they may be admitted to practice in this district. *In re Allboro Waterproofing Corp.,* 224 B.R. at 291 n. 3, *citing* S.D.N.Y. & E.D.N.Y. L. Civ. R. 1.3(a); E.D.N.Y. LBR 2090–1(a).

[3] "Under the New York rules of professional conduct, a lawyer generally cannot simultaneously serve clients with conflicting interests." *Kittay v. Kornstein,* 230 F.3d at 537. Disciplinary Rule ("DR") 5–105(a) and (b) forbid an attorney "from commencing or continuing simultaneous representation of two or more clients if his exercise of independent professional judgment on behalf of either would likely be 'adversely affected,' or where the dual representation would likely involve the representation of 'differing interests.' " *In re Granite Partners, L.P.,* 219 B.R. 22, 34 (Bankr.S.D.N.Y.1998); N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.24(2005). [FN1] "Differing interests include every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." 22 NYCRR § 1200.1.

> FN1. The Disciplinary Rules of the New York Code of Professional Responsibility "are mandatory in character." N.Y.Code of Professional Responsibility Preliminary Statement, reprinted in N.Y. JUD. LAW APP. (McKinney 2005). They "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." *Id.*

DR 5–105(c) contains an exception to the rule that an attorney may not represent clients with differing interests:

> In the situations covered by subdivisions (a) and (b) of this section, a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implementations [sic] of the simultaneous representation and the advantages and risks involved.

[4] Critical to the application of DR–105(c) is that the clients give informed consent to the multiple representation. The issue, therefore, is whether Mr. Sabatino and the Debtor had "differing interests" while they were both represented by BG & S and, if so, whether BG & S could have competently represented both Mr. Sabatino and the Debtor, and whether they provided BG & S with their informed consent to the dual representation.

It is clear that Mr. Sabatino and the Debtor had differing interests from the beginning of the representation. It is well settled that "[a] passenger will almost always be advised to assert claims against all other drivers, including the passenger's driver." *Shaikh et al. v. Waiter,* 185 Misc.2d 52, 54, 710 N.Y.S.2d 873, 875 (2000) (citation omitted) (holding that a lawyer representing both passenger and driver incurs a substantial risk of a disqualifying conflict of interest).

In *Pessoni v. Rabkin,* 220 A.D.2d 732, 633 N.Y.S.2d 338 (2d. Dept.1995), a case analogous to this matter, an attorney represented the driver of an automobile involved in a collision as well as the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

driver's ***109** wife and children, who had been passengers. After the driver's wife and children obtained another lawyer, the court denied a motion by their original attorney for a hearing to determine his *quantum meruit* share of attorney's fees generated by the settlement of their claims, holding the attorney should have declined to represent the driver, wife and children in the first instance. *Id.* at 338–339. The court held that the multiple representation of a plaintiff driver and a plaintiff passenger amounts to a violation of New York Code of Professional Responsibility DR 5–105(a). *Id.* at 338–339, *citing* 22 NYCRR 1200.24[a]. As the Debtor sued Mr. Sabatino, it is clear that they, like the driver and passengers in *Pessoni,* had "differing interests."

Nor may BG & S rely on DR 5–105(c). BG & S asserts that during the course of their simultaneous representation of Mr. Sabatino and the Debtor they did not perform work that was adversarial in nature; that they merely filed "no fault" applications on behalf of both parties. This does not establish that BG & S satisfied the disinterested lawyer test under DR 5–105(c). At trial, Mr. Sabatino testified that in May of 2000, an attorney at BG & S advised him that his case would need to be "split" and gave Mr. Sabatino a business card for the law firm of Lieber and Gary. Attorneys from Lieber and Gary represented Mr. Sabatino going forward.

BG & S's continued representation of the Debtor violated their obligation to represent Mr. Sabatino with undivided loyalty. DR 5–105 forbids the concurrent or subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of a former client in the same matter. *Cardinale, et al. v. Golinello, et al.,* 43 N.Y.2d 288, 296, 401 N.Y.S.2d 191, 372 N.E.2d 26, 30 (1977) (citation omitted). It is irrelevant whether or not BG & S obtained information during the course of their representation of Mr. Sabatino that was, or could have been, used in the course of their representation of the Debtor. Regardless of any actual detriment, Mr. Sabatino was entitled to freedom from apprehension and to certainty that his interests would not be prejudiced by BG & S's representation of the Debtor. *Id.*

[5] BG & S's actions in turning over Mr. Sabatino's case to the Lieber and Gary firm and later withdrawing as attorney for the Trustee show that BG & S knew their simultaneous representation of the Debtor and Mr. Sabatino colored the independence and impartial attitude required of attorneys by New York's Code of Professional Responsibility and the Code. "The standards of the profession exist for the protection and assurance of the clients and are demanding; an attorney must avoid not only the fact, but even the appearance of representing conflicting interests." *Id.*

Further, the testimony of the Debtor and Mr. Sabatino at trial shows that BG & S never obtained their consent to the dual representation. The Debtor testified that no one from BG & S informed her that there may be a conflict of interest at the start of the representation. (Tr. 40:13–18).[FN2] Mr. Sabatino testified that, at the initial meeting he and the Debtor had with an attorney from BG & S, the attorney told him privately that there could possibly be a conflict of interest. (Tr. 69:13–70:6; 73:24–74:3). In any event, it is clear that BG & S did not fully disclose the pros and cons of simultaneous representation to the Debtor and Mr. Sabatino and therefore did not satisfy the requirements of DR 5–105(c).

FN2. "Tr." refers to the transcript of the trial held on January 31, 2005.

***110** [6] The fact that, two months after undertaking the improper dual representation of the Debtor and Mr. Sabatino, BG & S referred Mr. Sabatino to other counsel, does not cure BG & S's violation of DR 5–105(a). "After an actual conflict of interest has arisen, an attorney will often seek to end his or her representation of one client to avoid violation of the Code of Professional Responsibility DR 5–105(a).

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

However, 'an attorney who undertakes the joint representation of two parties in a law suit [should] not continue as counsel for either one after an actual conflict of interest has arisen'...since continued representation of either plaintiff would necessarily result in a violation of an attorney's fiduciary obligations of preserving his or her client's confidentiality, as well as the duty to pursue a client's interests vigorously." *Shaikh et al. v. Waiters,* 710 N.Y.S.2d at 877 (citations omitted).

Accordingly, this Court finds that BG & S violated DR 5–105 through their simultaneous representation of the Debtor and Mr. Sabatino, and their continued representation of the Debtor after Mr. Sabatino was referred to other counsel.

*Disclosure Requirements Under Bankruptcy Rule 2014*

To enable parties in interest, and the Court, to determine whether an attorney has a conflict of interest, Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014–1 require an attorney whom the trustee seeks to employ to file an affidavit in which such attorney certifies that he or she does not hold or represent an interest adverse to the estate except as specifically disclosed therein.

[7][8][9][10] Bankruptcy Rule 2014 disclosure requirements are strictly construed. *In re Leslie Fay Cos.,* 175 B.R. 525, 533 (Bankr.S.D.N.Y.1994), *citing Rome v. Braunstein,* 19 F.3d 54, 59 (1st Cir.1994); *In re Arlan's Dep't Stores, Inc.,* 615 F.2d 925, 933 (2d Cir.1979) (decided under substantially similar predecessor to Bankruptcy Rule 2014). All facts that may have any bearing on the disinterestedness of a professional must be disclosed. *In re Leslie Fay Cos.,* 175 B.R. at 533. It is the responsibility of the professional, not the court, to make sure that all relevant connections have been brought to light. *Id., citing Rome v. Braunstein,* 19 F.3d at 58–60; *In re Glenn Electric Sales,* 99 B.R. 596, 599 (D.N.J.1988); *Diamond Lumber, Inc. v. Unsecured Creditors' Committee (In re Diamond Lumber, Inc.),* 88 Bankr.773, 776 (N.D.Tex.1988). The duty of disclosure is so important that the failure of an attorney to disclose all of his or her relevant connections is an independent basis for the disallowance of fees. *In re Leslie Fay Cos.,* 175 B.R. at 533, *citing Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.),* 655 F.2d 463, 469 (2d Cir.1981); *In re Arlan's,* 615 F.2d at 933; *Rome v. Braunstein,* 19 F.3d at 59; *In re Granite Sheet Metal Works, Inc.,* 159 B.R. 840, 847 (Bankr.S.D.Ill.1993); *In re Envirodyne Industries Inc.,* 150 B.R. 1008, 1021 (Bankr.N.D.Ill.1993); *see also In re Fretter, Inc.,* 219 B.R. 769 (Bankr.N.D.Ohio 1998) (holding that while appropriate sanctions may vary, in the court's discretion, denial of all fees is required when an attorney willfully disregards the fiduciary obligations under the disclosure rules).

[11] It is clear that BG & S did not comply with the disclosure requirements of Bankruptcy Rule 2014. At trial, Mr. Shields testified that he had not reviewed any retainer agreements entered into by his firm in connection with this case prior to signing the affirmation submitted with the Trustee's application to retain BG & S as special counsel to the Trustee, and therefore was not aware that BG & S had ***111** represented Mr. Sabatino. (Tr. 111:2–13). Further, Mr. Shields testified that he did not know what the term "disinterested" meant under the Code. (Tr. 117:11–23). Mr. Shield's failure to properly review his firm's files and his unfamiliarity with the Code does not excuse BG & S from the disclosure requirements of Rule 2014. *In re Park Helena Corp.,* 63 F.3d 877 (9th Cir.1995) *cert. denied* 516 U.S. 1049, 116 S.Ct. 712, 133 L.Ed.2d 667 (1996) (even a negligent or inadvertent failure to disclose a connection with a party in interest may result in a denial of all requested fees).

*BG & S's Assertion of a Charging Lien*

[12][13][14] New York law grants attorneys a charging lien on the proceeds of a judgment or settlement reached in favor of their client. NY CLS Jud §

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

475. The charging lien of an attorney under § 475 comes into being at the commencement of an action or proceeding. *In re Brooklyn Bridge Southwest Urban Renewal Project,* 31 A.D.2d 895, 297 N.Y.S.2d 835 (1st Dept.1969). A charging lien is based upon an equitable doctrine that an attorney should be paid out of proceeds of a judgment procured by him. *Theroux v. Theroux,* 145 A.D.2d 625, 536 N.Y.S.2d 151 (2d Dept.1988).

[15] Section 475 of the New York Judiciary Law is enforceable by federal courts. *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 448 (2d Cir.1998). An attorney is not entitled to a charging lien in cases in which he or she is discharged with cause. *Artache v. Goldin,* 173 A.D.2d 667, 570 N.Y.S.2d 238 (2d Dept.1991) (holding that if an attorney is discharged without cause, he is entitled to a charging lien for the reasonable value of his services rendered prior to the date of the substitution of counsel where (1) his representation was entirely competent and successful up until his discharge, (2) any potential **conflict** of interest was disclosed and the plaintiff chose to continue to be represented by the attorney, and (3) the discharge of the attorney occurred solely because of a **fee** dispute); *K.E.C. v. C.A.C.,* 173 Misc.2d 592, 599–600, 661 N.Y.S.2d 715, 721 (1997) (holding that in the absence of compliance with the Code of Professional Responsibility, a charging lien will not be granted), *citing Matter of Cooperman,* 83 N.Y.2d 465, 611 N.Y.S.2d 465, 633 N.E.2d 1069 (1994).

[16] BG & S is not entitled to a charging lien in this case. BG & S withdrew its representation of the Trustee on the eve of the trial of the Debtor's personal injury action because of their belated realization that the firm had a disqualifying conflict of interest. Had BG & S disclosed the firm's conflict of interest to the Trustee and not withdrawn from representation of the estate, the Trustee would have discharged the firm, with cause. (Doc. 26, p 9).[FN3] BG & S's failure to recognize its conflict of interest sooner was due either to the firm's inattention to or unfamiliarity with the New York Code of Professional Responsibility and the rules of this Court. Neither excuse would mitigate BG & S's conduct or entitle them to a charging lien for any services rendered to the Debtor or the estate prior to the firm's resignation.

FN3. "Doc." refers to documents listed on the bankruptcy court's docket, by docket number.

*Sanctions*

[17] BG & S violated New York Code of Professional Responsibility DR 5–105(a) and (b) by representing the Debtor and Mr. Sabatino, clients with differing interests, in the same personal injury action. "It is well settled that '[a]n attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal ***112** fees for any services rendered.' " *Pessoni v. Rabkin,* 633 N.Y.S.2d at 339, *citing Matter of Winston,* 214 A.D.2d 677, 625 N.Y.S.2d 927 (2d Dept.1995); *Shelton v. Shelton,* 151 A.D.2d 659, 542 N.Y.S.2d 719 (2d Dept.1989); *Brill v. Friends World Coll.,* 133 A.D.2d 729, 520 N.Y.S.2d 160 (2d Dept.1987). Accordingly, BG & S is not entitled to any fees for services rendered to the Debtor pre-petition.

[18] This Court has broad latitude to sanction an attorney who violates Bankruptcy Rule 2014's disclosure rules. *In re Leslie Fay Cos.,* 175 B.R. at 538, *citing In re Kelton Motors,* 109 B.R. 641, 654 (Bankr.D.Vt.1989); *In re Iorizzo,* 35 B.R. 465, 468–69, (Bankr.E.D.N.Y.1983). BG & S's negligence in submitting an affidavit to this Court that contained affirmations that they had not made reasonable efforts to ensure were correct is inexcusable and justifies a denial of **fees** and expenses for services rendered to the estate post-petition.

For the foregoing reasons, BG & S's objection to the payment of the full contingent **fee** to the Lisabeth

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Firm is overruled.

*Conclusion*

The trustee is directed to settle an order and judgment consistent with the foregoing and awarding **fees** and expenses to the Lisabeth Firm.

Bkrtcy.E.D.N.Y.,2005.
In re Bruno
327 B.R. 104

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**PlnDue, DebtEd, DomSup**

**U.S. Bankruptcy Court**
**Eastern District of New York (Central Islip)**
**Bankruptcy Petition #: 8-15-71331-ast**

*Assigned to:* Judge Alan S Trust
Chapter 13
Voluntary
Asset

*Date filed:* 03/30/2015
*341 meeting:* 04/28/2015
*Deadline for filing claims:* 07/27/2015
*Deadline for filing claims (govt.):* 09/28/2015

***Debtor***
**Dana Smith**
26664 Seagull Way
Unit B216
Malibu, CA 90265
SUFFOLK-NY
SSN / ITIN: xxx-xx-6323

represented by **Gary C Fischoff**
Berger, Fischoff & Shumer, LLP
40 Crossways Park Drive
Woodbury, NY 11797
516-747-1136
Email: gfischoff@bfslawfirm.com

***Trustee***
**Marianne DeRosa**
Standing Chapter 13 Trustee
115 Eileen Way
Suite 105
Syosset, NY 11791
(516) 622-1340

***U.S. Trustee***
**United States Trustee**
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437
(631) 715-7800

| Filing Date | # | Docket Text |
|---|---|---|
| 03/30/2015 | 1<br>(13 pgs; 3 docs) | Chapter 13 Voluntary Petition. Fee Amount $310 Filed by Gary C |

P

Hon. Alan Trust
U.S. Bankruptcy Judge

Case No:
15-71331-ast

CLERK
U.S. BANKRUPTCY
EASTERN DISTRICT
NEW YORK
2015 APR 21 A 11:59
RECEIVED

(1) I hereby request an order granting the debtor (Dane Smith) an extension of time within which to file the Schedule "B", Schedule "C", Schedule "G", Schedule "H", Schedule "I", Schedule "J", and any other requested or required documents. (Please refer to attached).

(2) I am requesting more time to replace or substitute my attorney.

(2) He has made unauthorized changes to my petition including adding creditors, who do not exist as my creditors.

(2a) He tried to intimidate me to sign paper without reading them.

(3) He made an unauthorized change to my address.

(3a) I cannot work with an attorney who is not honest.

(4) He did not follow through on invoking the stay in another matter.

(5) ~~He tried to~~ After meeting with the pro se law clerk last week, Elyse Center, I met with Gary Fischoff (my lawyer) on Thursday and requested an explanation and a deletion. He refused and provided no explanation.

(6) (Please see attached letter to my attorney)
My letter confirmed our meeting on Thursday April 16, 2015.
Gary refused to meet with me last Friday or address my letter. He promised to address ~~(illegible)~~ on Monday and again refused to discuss with me.

(6a) Lawyer never performed the written conflict of interest check.

(7) I addressed my concern of his promise to adjourn to replace him as an attorney and to meet the required date of April 21. This all should have been addressed last week but my lawyer refused to meet or discuss.

(8) I paid Gary Fischoff $8,400 in full certified funds on March 30, 24.

(8) I hereby ~~request the following~~:

(1) Time to secure another attorney with the
(2) Time to submit papers (Schedules, etc) new attorney
(3) Disgorge my current attorneys fees, in order to pay new attorney.
(4) Order my attorney to hand over all papers, which I have signed previously and his preparation now, today.
(5) I am concerned about any lapse.
(6) Place a stay or continue to stay

Dana Smith

Gary Fischoff,esq

Gary,

Per our office meeting yesterday, it was confirmed that a letter, invoking the stay, (and my rights) should have been sent to the opposing counsel..
As you already know, opposing counsel in the Litigation has made a claim for legal fees and other fees on me personally.

Furthermore, additional steps may be taken to invoke the stay.

You advised that you would not comply with this., thus advised that you would request an adjournment for completion of the Petition ,in order to secure time for new counsel (since the Petition is due next week (April 21st).

(1)Please advise status of that Adjournment approval.

(2)Furthermore, since I would have to retain new counsel and I had already paid you in advance the legal fees, you advised that you would refund the full amount ($8,000), in order to retain new counsel.

(3)You also confirmed that the stay would still be in place , and no lapse would occur.

Please confirm the status of the above referenced items today.

(Note: I contacted you office today and requested your response. today.

Best,

Dana Smith

April 17,2015