UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

DANA A. SMITH
DEBTOR

Index No.    15-71331

WESTEY SMITH MANDRIOTA and
TRACEY ALLYSON McCAULEY, and
KIMBERLY HYNSI,

      Plaintiffs,

## MOTION TO DENY THE PLAINTIFFS
## REQUEST TO LIFT THE AUTOMATIC STAY

Debtor had prepaid lawyer fee and Debtor's lawyer failed to answer and oppose the lift of the stay on May 18th.

Debtor reserves the right to Amend the Answer with the qualified substitute counsel. The fair and correct forum for the final answers must be completed by substitute counsel.

The following statements represent the advice of Bankruptcy Attorneys, CPAs, Financial Consultants.                Summary

(1) Unclean Hands & Fraud: Conclusive Evidence will prove that Plaintiffs, Tracey McCauley and Westey Mandriota, intentionally blocked Tenant rentals of the Mansion property, thus causing a tax lien, to force the sale of the Mansion, and throw their mother out ,for a sale, for their own financial gain for themselves and their husbands.They made arrangements with the neighbor, for a secret under market deal .(Investigation & subpoenas are demanded)
Shortly after the Supreme Court win ,by both the brilliant mother, Gloria M. Smith, and daughter Dana Smith(against Westey Mandriota & Tracey McCauley), mother had accident. (Further investigation is requested).
(2) Discovery requests:

Bankruptcy Experts' Legal Analysis of Petition :(Refer to Exhibits and Debtor's Win in Supreme Court Decisions)

(1)Completely False Assumptions:

Termination of Tax Trust 15 years ago, ownership are members in a partnership, thus, No Trust.

False Document: Falsely includes Commercial Property.

Debtor has been General Partner, & Managing Partner/ partial Owner of Mansion Rental Properties since Year 2000.

Evidence: (1)Tax returns filed by all partners (not terminated trust) (2) Chase Bank legal department confirming Trust ended in Year 2000 (3)emails, documents, partnership, LLc , claiming ownerships by all parties

(1a)Mahoney -Buntzman vs. Buntzman: A party in litigation is equitably estopped from taking a contrary position to the way they have files their tax returns.(More cases confirm this). Thus, partnership, not terminated tax trust.

(3)Tax trust Document states that Trust Terminates in Year 2000

Surrogates Court has no Jursidiction

Supreme Court should have Jurisdiction.

Commercial Division of Supreme Court is qualified, since issues involving Taxes require Commercial Division Court Qualifications( potential remedies to Capital gains Tax, estate tax, & property tax), to Avoid Catastophic Tax Impact upon sale.of Income-producing property.

Oppose Lift of Stay(refer to attachment):

Legally, not allowed to interfere with Debtor's Ownership interest in property, which also derives income from, with which to pay creditors.(Tax Cpas' advise to restore property back to rental , at minimum 1 year)

Title on Debtor's 2nd property ,also shows Debtor as an Individual, so Debtor is entitled to a stay.

## Background

The Courts must investigate Plaintiffs orchestrated actions with neighbor and all parties and affiliates (including former lawyers, Mitnick) to manipulate the price and force the sale of a valuable waterfront peninsula property (with dock and Rental Income),,  for their own gain, while forcing their own 87 year old  Mother out of her own home.. A further investigation is warranted on her accident and her ultimate death.

*[signature]*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

DANA A. SMITH
DEBTOR

Index No.    15-71331

WESTEY SMITH MANDRIOTA and
TRACEY ALLYSON McCAULEY, and
KIMBERLY HYNSI,

    Plaintiffs,

## MOTION TO DENY THE PLAINTIFFS
## REQUEST TO LIFT THE AUTOMATIC STAY

Debtor had prepaid lawyer fee and Debtor's lawyer failed to answer and oppose the lift of the stay on May 18th.

Debtor reserves the right to Amend the Answer with the qualified substitute counsel. The fair and correct forum for the final answers must be completed by substitute counsel.

The following statements represent the advice of Bankruptcy Attorneys, CPAs, Financial Consultants.

### Background

Gloria Smith was a kind mother and brilliant real estate visionary and creator. Unfortunately, she suffered through a series of deception, abuse, harassment and parasitic behavior by the Plaintiffs. After Plaintiffs blocked the successful 30 year rental history of the Mansion Rental Property (through force and intimidation), Mother Gloria Smith and daughter Dana Smith were forced to subsidize the home to their detriment and ultimately Gloria Smith became estranged

from her home until her untimely demise and Dana Smith has subsidized the Mansion Rental Property to her current condition of illiquidity.

It is critical to understand the intent and logic of the underlying real estate transactions over the past 30+ years'Gloria Smith and Wesley Smith (deceased) were the parents to 4 daughters. Tracey, Kimberly, Dana and Westey.

Timeline:

(1) In 1979, our parents purchased a large waterfront estate ( "Residence") with a heavy debt burden.

The debt service was sourced from income from (I) sublease rental income of Commercial property(leased by mother Gloria); salary of husband Wes; and (3) daughter Dana's NY City corporate salary; Dana's NY City apartment sublease profits; plus Dana's share of commercial rental income (from ownership share of Commercial Building).

(2) in 1981, the estate Residence was at risk for mortgage default, when outside real estate investor (Pius Realty) bid to buy the Commercial Property from Gloria's landlord and increase Gloria's rent (thereby eliminating Gloria's sublease rental profits to service the debt on the Residence.

(3) To save the estate Residence from mortgage default required the joint equity purchase of the Commercial property (with 50/50 equity capital contributions by both daughter Dana and mother Gloria) to preserve the rental income as a source of Residence debt service.

(4) In 1981, Dana's equity capital was invested to purchase the Commercial building as (50/50) " joint tenants right of survivorship".(see Deed) Sister Kimberly was the lawyer for the 1981

closing. Dana sacrificed her own equity capital designated for own alternative rental property in Cold Spring Harbor, as a leveraged equity investment (as most real estate investments arc). Real estate "income returns" on equity are advantaged to be (I) leveraged,; (2) to receive annual net cash rentals ("cash- on- cash" dividends) which accumulate during holding period, ;and (3) appreciation in value at time of sale (on leveraged equity investment). Mutual agreement for Gloria to receive Dana's share of net rentals, and Dana compensated at sale (non-event).

(5) After the 1983 Death of protector/father Wes Smith, Kimberly capitalized on her influence/control over mother's financial decisions on income from mother's real estate assets. Capital Gain on Leveraged Equity-:Comparison: Sale of Commercial Building vs. Sale of Cold

(1) Debtor, Dana A. Smith categorically rejects the slanderous, defamatory claims having no facts or evidence backing up the Plaintiffs claims.

A.   **Mr. Macco has not established cause to lift the stay.**

(2) Like many others asserting claims against the Debtors, Mr. Macco cannot jump to the head of the line to pursue her damages claims in another forum.[1]

(3) A. Mr. Macco Has Not Established Cause to Lift the Automatic Stay Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition: operates as a stay, applicable to all entities, of – (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. 11 U.S.C. § 362(a)(1).

(4) Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay. . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause." In determining whether "cause" exists to lift the stay for prepetition litigation, courts consider the following factors (the "*Sonnax*Factors"):

> (1) whether relief would result in a partial or complete resolution of the issues,
>
> (2) the lack of any connection with or interference with the bankruptcy case,
>
> (3) whether the other proceeding involves the debtor as a fiduciary,
>
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
>
> (5) whether the debtor's insurer has assumed full responsibility for defending the action,
>
> (6) whether the action primarily involves third parties,
>
> (7) whether litigation in another forum would prejudice the interests of other creditors,
>
> (8) whether the judgment claim arising from the other action is subject to equitable subordination,
>
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,
>
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation,
>
> (11) whether the parties are ready for trial in the other proceeding, and

(12) the impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re N.Y. Med. Grp., PC*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001). Not all of the *Sonnax*Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)).

(5) The moving party bears the initial burden to demonstrate that "cause" exists to lift the stay. *See Sonnax*, 907 F.2d at 1285; *Capital Comm. Fed. Credit Union v. Boodrow(In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") If the movant is an unsecured creditor, the policies of the automatic stay weigh against granting the relief requested. "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *see also Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 17, 2010). Under section 362(d)(1), Mr. Macco bears the initial burden of showing "cause" to lift the stay. *In re Mazzeo*, 167 F.3d at 142. "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax*, 907 F.2d at 1285. Not all of the *Sonnax*Factors apply in Mr. Macco's case, but the relevant *Sonnax*Factors weigh strongly in favor of maintaining the automatic stay of the Mr. Macco Litigation.

*1. Relief Might Not Result in a Partial or Complete Resolution of the Issues and the Movant's Case Is Not Ready for Trial (Sonnax Factor Nos. 1 and 11)*

While relief may eventually result in partial or complete resolution of the issue at hand, the resolution may not be immediate. The Mr. Macco Litigation is in its early stages. Discovery, trial preparation and, absent a settlement, trial all remain to be done. Therefore, the first and eleventh *Sonnax*Factors weigh against lifting the stay.

*2. Lifting the Automatic Stay Will Interfere with the Debtors' Chapter 11 Cases*

*(Sonnax Factor No. 2)* Lifting the stay to allow Mr. Macco to proceed with her damages claims in another forum could open the floodgates for other movants who also seek stay relief; many creditors assert similar claims in state and federal courts across the country. Such litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize, forcing the Debtors to utilize time and resources that would otherwise be spent resolving these chapter 11 cases. Accordingly, the second *Sonnax*factor strongly weighs in favor of keeping the stay in place; lifting the stay will interfere with the Debtors' chapter 11 cases.

*3. The Mr. Macco Litigation Does Not Involve the Debtors as Fiduciaries (Sonnax Factor No. 3)* Mr. Macco does not assert that the Debtors are liable as fiduciaries. Even if she did, however, that alone would not be a basis for lifting the stay in this matter. "[G]enerally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984) (internal citation omitted). The Motion did not include any evidentiary showing that GMAC was acting as a fiduciary. Therefore, the third *Sonnax*Factor weighs against lifting the stay.

**Policies Underlying - The Automatic Stay Favor Giving the Debtors a Breathing Spell**

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). It maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. 3 COLLIER ON BANKRUPTCY ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011). The automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

(6) The automatic stay allows debtors to focus on their reorganization instead of litigation. *Id.* at 48. Damages claims against the Debtors, as in the Mr. Macco Litigation, are the usual grist for the bankruptcy claims allowance process; absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such claims. Permitting courts around the country to adjudicate claims risks diverting the attention of Debtors' personnel from pressing issues in the chapter 11 case and increases the risk of inconsistent decisions affecting similarly situated creditors.

(7) Debtor requests that Court deny the removal of the stay on several counts. Debtor is allowed an automatic stay as provided in 11 U.S.C. § 362 (a) (2) the lifting of the stay, should be

denied because Plaintiffs claims are not covered in 11 U.S.C. § 362 (b), which governs the exception to the automatic stay.

(8) Not only are plaintiffs not entitled to request the lift of the stay, but their entire action is fatally flawed for several reasons and should be dismissed. Their actions are barred by the Statute of limitations as set forth in CPLR 213(1).

(9) The Plaintiffs have no standingin this procedure as they are not creditors of the Debtor. And actually, documents will show that Plaintiffs are actually debtors of the Debtor and using these proceedings to irreparably harm Debtor and obfuscate the facts.

(10)  The Plaintiffs request to lift the stay is in order to sell a property that is a critical part of the Debtor's bankruptcy plan.

(11)  The sale of the Mansion Rental Property as proposed would have significant negative impact on Debtor's estate in terms of asset value as well as create significant capital gains tax obligations. Plaintiffs have not established a market value for the property. The sale, which does not appear to be an arms-length transaction would be tantamount to a fraudulent conveyance.

(12)  The Trust terminated under its own terms in year 2000 and therefore Surrogate Court has no jurisdiction in this matter.(EPTL Section 207 covers this).Furthermore, the Surrogates Court violated Federal Bankruptcy Code, when they failed to obey the stay. Thus, Surrogate's Court order is Void.Mr. Macco's is incorrect, because the Surrogate order is Void. Debtor has been further advised that a Conflict of Interests exists in Surrogates Court, due to a conflict waiver given in another case, which was not provided in this case.

(12a) Surrogate Court Recusal Mandated: In the Annette Sabin Estate Case, Surrogate Court

Judge acknowledged a full disclosure conflict of interest waiver to the law firm of Schulte Roth, admitting his close ties and friendships with the opposing law firm of Farrell Fritz. The same waiver should have been provided to the Estate of Gloria Smith, due to a conflict of interest with the same law firm in a related case. Furthermore, all cases involving that law firm (retroactive, present and future cases) should receive this full disclosure and Conflict of Interest waiver. Surrogates Court is aware of this issue, as evidenced by their Time-Stamp on related communication (Refer to Exhibit  )

(12a) Debtor is an owner in Mansion Rental property), since year 2000, when the trust ended, by its own terms stated in Grit Document. Furthermore, Surrogate Court is not qualified to handle complex tax, partnership and business issues. Moreover, if Surrogate Court orders a sale of the property, tax CPAs advised that there is risk that the tax liabilities will exceed assets in the Debtors estate.

(13) California Property Deed has Debtor's name, as Individual, thus, Debtor is entitled to an automatic stay. Debtor, Dana Smith, has a 100% Mortgage Obligation on this property, for the past 20 years (30 year mortgage), and must ciontinue with her mortgage obligations.

(14) **Priority of Jurisdiction**–In the event of removal of this case from bankruptcy court, the NY State Law and Federal Laws compel compliance with jurisdiction priorities:

(15)     should be directto preexisting and still continuing case in NY Supreme Court, Dana Smith vs Kimberly Hysni. Index No:2199-11. Furthermore, the NY Supreme Court order blocks all actions pertaining to multiple properties until that case is resolved. NY State Laws pertaining to jurisdiction over this matter state that Surrogate court has no jurisdiction on California real estate. The property been owned by the four sisters as individuals for 15 years.

**In compliance with Federal and State Laws, Supreme Court has jurisdiction over Surrogate court:**

    a) Four individuals own property since 2000, as evidenced by tax returns

    b) Predating and pending Supreme Court Case has priority over surrogates court

    c) A court order from Supreme Court blocks any action or transaction until multi-property dispute is resolved in Supreme Court.

    d) California Supreme court has jurisdiction over two California properties in Malibu and San Diego.

    e) California has jurisdiction over Note Payable dispute with Hysni.

    f) Ownership of San Diego property is in dispute.

    g) Income producing properties as a Business, will be harmed with significant adverse tax consequences unless handled in the qualified Supreme Court.

(16) Supreme Court should have Jurisdiction for the following reasons. Commercial Division of Supreme Court is qualified, since issues involving Taxes, require Commercial Division Court Qualifications (potential remedies to Capital gains Tax, estate tax, & property tax), to Avoid Catastrophic Tax Impact upon sale of Income-producing property (avoid harm to debtor). Complex Financial Claims of partnership issues including capital accounts, and unequal distributions and contributions can only be handled in the Supreme Court setting (avoid financial harm to debtor).

(17) Plaintiffs already were defeated by the same case in Supreme Court as Surrogate Court Underlying Case:

Affirmative Defenses:

(1) Statute of Limitations: The trust expired on April 22, 2000, ,and the within action is barred by the statute of Limitations as set forth in CPLR 213(1).(Refer to Supreme Court win)

(2) Res Judicata (claim preclusion), meant to bar continued litigation of a case on same issues between the parties.(matter cannot be raised again)

(3) Collateral Estoppels

(4) Unclean Hands: Plaintiffs own actions of blocking Tenant Rentals, blocked the Revenue stream with which to pay real Estate taxes, thus creating a tax lien. Plaintiffs own actions represented Tortious Interference with the positive cash flow history (30 years) of a successful Rental Business. Supreme Court Decision confirms that Plaintiffs had been living "RENT FREE" for over 20 years. Thus, unclean hands.

(5) Laches & Waivers

(6) Ratification

(7) Bad Faith

(8) Respondent, Dana Smith acted in Good Faith, has personally financially supported Mansion expenses over 30 years.(As Landlord to Commercial Property,since 1981, and subsequent Note Investments and payments of mortgages and equity loans)

(9) Fraudulent Document(refer to rest of Answers)

(18)    Conclusive Evidence will prove that Plaintiff, Tracey McCauley has acted in Bad Faith::

   a. Unclean Hands & Fraud: intentionally blocked Tenant rentals of the Mansion property, thus causing a tax lien, to force the sale of the Mansion, and throw their

        mother out, for a sale and her own financial gain for Tracey and her husband. They made arrangements with the neighbor, for a below market deal. (Investigation & subpoenas are demanded). (Recent Surrogate Court admitted to this "side-deal" with the neighbor)

    b. Shortly after the Supreme Court win, by both the brilliant mother, Gloria M. Smith, and daughter Dana Smith (against WesteyMandriota& Tracey McCauley), mother had an accident at home and was prevented from returning to the safety of her home, by Plaintiff, Tracey McCauley, through threats. Mother was never allowed to return home and her death resulted from a hospital error.  (Further investigation is necessary and lawsuits with claims for 1) wrongful death and 2) pain of suffering on behalf of Gloria Smith and her estate must be immediately initiated by filing a summons with notice by the co-executors.  This Debtor request the Bankruptcy Trustee to compel co-executors fulfill their fiduciary duty to of the estate.

(19)    A Bankruptcy Experts' Legal Analysis of Petition: There is no evidence and therefore discovery is necessary. (Refer to Exhibits and Debtor's Win in Supreme Court Decisions): Plaintiff's petition is based a completely false assumptions that the trust exists.Termination of Tax Trust 15 years ago, thus there is No Trust.False Document: Falsely includes Commercial Property.

(20)    As an Owner/Landlord to this Rental property, Debtor is entitled to a 1/4 share of the rental income to the Mansion property, however, PlaintiffWesteyMandriota prevent the Tenant Rentals, receiving free rent for over 20 years.  The blockage would be considered

waste and tortious interference of income. In Contrast Debtor and mother have financially funded and subsidized the property for over 35 years.

(21) Supreme Court Decision:Tax Returns confirm Trust termination: Law: "Mahoney vs. Buntzman": A party to a litigation is equitably estopped from taking position that is contrary to that taken in an income tax return. (Mahoney-Buntzman v. Buntzman 12 NY 3d 4125,909 NE 2d 62,88' NYS 2d 369(2009).

(22) Injunctions: Furthermore,Debtor needs to time for discovery to provide evidence for false claims.This will show that Debtor is a creditor to Plaintiffs.

(23) Finally Debtor requests an injunction and a Restraining Order against any harassment upon visiting the Mansion Rental to procure her documents, tax returns, and further evidence to complete the plan. Debtor request restraining order barring the sale or removal of the contents of the estate or the Bruno Land (valuation of the content is critical to Debtors estate) and the real property.

(24) Debtor requests further access to retrieve documents. Debtor also submits the following documents for the Courts consideration.

       (i)Verified Answers and Defenses
       (ii) Favorable Win in Supreme Court Decision in Favor Dana Smith and mother Gloria Smith
       (iii) Evidence: Sample or partial evidence checks demonstrating Dana Smith's support of the Mansion Rental Property
       (iv) Cash Flows from Commercial Property to support Mansion
       (v) Commercial Property deed

-San Diego Property Deed
-3 Malibu Property Deeds
-4 Motgage Bank Loan to Dana Smith for Malibu Property
(vii) Evidence showing and accountant verification of Dana Smith wiring in of $96,000.05 of her own personal account to the closing statement
(viii)Personal Checks from Debtor supporting Mansion
(ix) Tax returns
(x) Internal Revenue Service Document with the Partnership Tax ID Number for East Point Locations
(xi)
(xii) CPA verification of transactions (sale of Commercial Property, purchase of California Properties, and Refinance of California property.
(Xiii) Tax Accountants and Forensics will be forwarding analysis on all transactions and documents once Debtor secures safe access to property.

*[signature: Dana Smith]*